ARMANDO A. MIRANDA, Plaintiff and Appellant, v. JOSÉ L. PESQUERA, Defendant and Appellee.

No. 6674. Argued December 10, 1935.—Decided December 23, 1935.

*Armando A. Miranda, in pro. per.*, and *Rafael F. Barbosa* for appellant. *Dubón & Ochoteco* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

This is an action brought by Attorney Armando A. Miranda against José L. Pesquera, to recover compensation for professional services. It was alleged by the plaintiff that from January 1929, to July 1930, he rendered services to Pesquera in his capacity as attorney, without receiving any compensation, notwithstanding his demands for payment made upon the said defendant. The plaintiff demanded

judgment in his favor for the sum of $800. The lower court entered a judgment dismissing the complaint on the merits. Thereupon the plaintiff appealed from the judgment and assigned in his brief two errors, which can be considered together as they both refer to the weighing of the evidence.

The district court considered as proven that the plaintiff performed the services as alleged in the complaint but held that there was never any contract, either express or implied between Miranda and Pesquera, the former having acted at the request of Toral, manager of Pesquera, and the said Toral not being empowered to contract in behalf of the defendant for the services of an attorney.

The evidence for the plaintiff consisted of his own testimony and of thirty-four documents, to wit: twenty-six copies of letters regarding the collection of rentals on town lots belonging to Pesquera, a draft of a contract of lease concerning the lots, and several complaints filed in the Municipal Court of Bayamón.

The plaintiff testified that about November 1928, the defendant called him on the telephone from his office in San Juan and asked him to come on the following day to his office in Bayamón where the business of several real estate developments belonging to Pesquera is conducted; that on the following day, at 10:30 a. m., he called at said office where Pesquera told him that for more than four months he had tried to get his cousin, Carlos M. Pesquera, to take charge of such business but without success, and that he wanted him, Miranda, to take charge of the suits and of everything connected with his real estate business; that no compensation was agreed upon for his work; that Pesquera told him that he did not care to sue anybody except in extreme cases; that he would like him to communicate with any defaulting tenant in order to collect the rent due; that he wrote to twenty-six tenants of Pesquera demanding payment; that about one and a half months after writing the above letters Pesquera called him on the telephone for

detailed information as to these activities and that he reported
to him thereon, and that Pesquera told him that he knew
about the letters as several persons had called at his office
to pay; that Pesquera told him that he wanted to proceed
against such persons as had not paid or refused to pay; that
he told Pesquera that they should wait a little longer and
that he would go and see such persons personally and try
to make them pay, and that both agreed on this course; that
he called on each of the persons to whom letters had been
written and that many of them called at the office, for
example, Teresa Cortés de Ramírez who paid in his presence
part of what she owed; that months passed and about July
or August there only remained eight or ten persons who did
not want to pay and he said to him: "Look here, Pepito
(Pesquera), the people in the lots have paid, but there are
some who do not want to pay . . . . . What do you think
should be done about them?"; that Pesquera said to him:
"Well, I think that those persons should be proceeded
against. You will see that as soon as they are served with
the summons by the marshal they will pay, if not all, at
least a good part of what they owe. And really, I need
money now, so this is the right time to sue them"; that the
witness asked him about the payment of court fees and
Pesquera said to him that he was going to instruct Toral to
advance him the amount of court fees in each case upon
Miranda's request; that in compliance with the above
instructions he filed seven complaints in the Municipal Court
of Bayamón; that whenever he asked Pesquera's advice
regarding any one of such persons before bringing suit, Pes-
quera would say: "Proceed against him"; that if any of
the persons sued paid at least one-half of the amount owed,
Pesquera would instruct him not to proceed further in such
case; that Pesquera consulted him about any homestead
exemption that might be set up by those who had houses
built on the lots and that the witness studied that matter;
that Pesquera requested him to prepare a form of contract

of lease regarding the lots with a clause whereby the homestead right would be waived; that he prepared such contract before Pesquera sailed for the United States; that one afternoon he met Pesquera in the post office at San Juan and that, at Pesquera's request, he went with him in his car; that he read the contract to Pesquera in the car which stopped in front of the witness's home; that it was between 6:30 and 7 p.m., and it was already dark; that Pesquera told him that he liked the contract very much but that he wanted to read it carefully so as to clear up any doubtful point, or to make any amendment or addition to it; that at Pesquera's request he left the contract in the latter's office; that about four weeks afterward he met Pesquera in Bayamón and asked him about the contract and that Pesquera told him that it was very good; that Pesquera told him that he wanted to have a copy of the contract and that the witness told him to keep the copy he had because he had several other copies in his office; that Pesquera told the witness that he was going to instruct Toral on his return from the United States to have the contract printed; that Pesquera told him to hand a copy to Toral, which he did two or three days afterward; that one afternoon on January 1930, he met Pesquera in San Juan and told him that he wanted his help and that Pesquera said: "Well, what is it?"; that he explained to him that he was ill and that an operation had to be performed on his tonsils and nose and that he needed money, and that Pesquera said: "You need not say any more . . . . . . call at my office tomorrow"; that the witness said that he needed about $200 and that Pesquera said to him: "Certainly," and told him to call at his office at two o'clock in the afternoon; that next day, at 2 o'clock in the afternoon, he went to Pesquera's office but did not find him there; that he called on twenty-two consecutive days and never met Pesquera nor received any check from him; that on one occasion he called at Pesquera's house and was told by the latter's wife that he was not there; that about half an hour later

he saw Pesquera leaving the house and that he stopped him; that he again asked Pesquera to let him have the $200; that Pesquera informed him that he had been very busy but that he would be in his office without fail on the following Wednesday, in the afternoon; that the witness told Pesquera that if he failed to meet him in the office on Wednesday he would not seek him any more, because he had to leave for the clinic to be operated on; that he called again at the office on Wednesday but that Pesquera was not there; that he asked for the check and there was no check; that he called at Pesquera's real estate office and inquired from Toral whether Pesquera had left any check for him and the former answered in the negative; that he was operated on; that he personally called again on Pesquera and found him in the offices of Asociación de Agricultores and told him that he had worked for him for more than one and a half years and wanted to know whether he meant to pay him, otherwise he would think no more of the account; that Pesquera gave again his excuses saying that he had been very busy, that he was not unwilling to pay but had scarcely time for anything; that the witness told him that he was going to mail him a statement of account and that he expected a check; that he said to him that he would have paid him that very day but that he did not have the checkbook with him; that he forwarded to him a statement of account for $750; that he met Pesquera on one occasion in the street who told him that the sum was excessive; that he explained to him that his work was worth that sum and much more; that he told Pesquera that a substantial payment from him would settle the account; that Pesquera asked him to put that down in writing and that he agreed and wrote him a letter to that effect; that he fixed $500 as a substantial payment; that he met Pesquera again who told him if he were to pay $500 he would rather give him the $750; that Pesquera further told him that for the last two or three months the witness had not even called at his office to keep up the work of demand-

ing payment from the defaulting tenants; that he explained to Pesquera that he had discontinued working for him ever since he had refused to pay him the $200 and that he would only work for him again if he paid him the money he owed him; that they had never agreed as regards his fees; that the witness then wrote him a letter withdrawing his offer to accept a substantial payment and insisting on the full sum of $750 as his fees; that in this letter for the first time he threatened him with judicial proceedings; that Pesquera did not answer his letter and would not even speak to him; that it was because of this attitude that he filed the complaint in the present case; that the internal revenue stamps and all court fees were paid by Pesquera through Toral; that the witness informed Toral that Pesquera said that he should advance him the money for the court fees to be paid in each case, and to make a note of it, his statement to that effect being as follows: "Pesquera has told me that you should give me the court fees to be paid in each case, make a note of it, and deliver the same to him so that he may keep an account of them."

Eugenio Toral, as witness for the defendant, testified that he was the manager of the building lots owned by Pesquera; that he was paid a percentage upon the money collected as rent; that he learned of some complaints filed by Attorney Miranda in connection with the property of which he had charge; that he advanced to Miranda money for the proceedings, which money was delivered to him to be paid in court; that Pesquera had not instructed him to deliver any sums to Miranda for that purpose, and that he advanced the money because his percentage depended on such collections; that he advanced the money out of his percentage and "besides part of such expenditure was charged as overhead"; that Miranda never called at the office to get money upon instructions from Pesquera; that Pesquera never had anything to do with the money he gave to Miranda; that Pesquera learned of these complaints on his arrival from

the United States; that at the time the complaints were filed Pesquera was in the United States; that no contract was entered into with the tenants but that a card system was in use ever since 1919; that Miranda brought him a contract on his request; that he had requested that contract from him because at that time Pesquera had in mind the leasing to him of all the lots and the witness wanted to know whether something new could be inserted in the contracts so as to render the collection of rent more satisfactory; that Pesquera never heard of this; that it was a private affair between himself and Miranda; that when fifty odd dollars was collected as the result of the letters sent by Miranda, the witness gave it to Miranda and told him that as more money were collected it would be given to him; that he agreed to pay Miranda from the money collected; that the judicial proceedings were discontinued upon the return of Pesquera because the latter definitely ordered him to do so; that Miranda told him that Pesquera had instructed him to discontinue the proceedings; that Pesquera never said anything to him; that what Pesquera said was that he disliked such proceedings.

On cross-examination, Toral testified that he could not definitely say how long Pesquera remained in the United States, but that it was less than nine months; that he did not know when the complaints were filed; that he did not know when they were discontinued; that he did not remember having taken the stand in the case of Carmen Quintana in the Municipal Court of Bayamón before Judge Ernesto Díaz Arana on August 14, 1929, as a witness for the plaintiff; that he handed Miranda the evidence in that case; that he did not remember having seen Miranda and Pesquera in conversation about the lease contract; that he did not remember Miranda telling him that he had delivered to him a copy of the contract; that Miranda brought him a copy of the contract and that he has it; that he did not remember ever seeing the plaintiff and Pesquera together; that Mi-

randa always used to call at the office looking for Pesquera and would never find him there; that the plaintiff would tell him that he was going to try to see Pesquera in his home; that this happened several times.

The defendant, José L. Pesquera, testified by means of a deposition taken in Washington, D. C., that he had never asked Miranda to act as his attorney; that he never ratified or authorized any agreement between Toral and plaintiff Miranda as regards the latter's professional services; that upon returning from the United States he was approached by one of his tenants who complained that he had been sued; that he informed him that he had never sued him nor had he ever thought of suing any of his tenants; but that the tenant produced a copy of the complaint in which he appeared through his attorney Armando A. Miranda; that he went at once to see Toral who told him that exclusively for his own account and because he was interested in making collections he had engaged Miranda to write a few letters to defaulting tenants, it being understood, however, that the action taken by Toral would never go as far as filing complaints or any judicial proceedings whatsoever; that he took the proper steps to withdraw the above judicial proceedings; that it was never his purpose to sue those tenants and that such has never been his policy, as appears from the records of the Municipal Court of Bayamón; that Dubón & Ochoteco were his attorneys at that time.

This is substantially the evidence which the lower court had before it and from which it must decide whether the services rendered by plaintiff Miranda should be paid by defendant Pesquera or not. As may be seen, the testimonial evidence consisted of the statements of three witnesses, namely, Armando Miranda, Eugenio Toral, and José L. Pesquera. The first witness stated in great detail the work done by him on behalf of Pesquera. That such work was actually performed is a fact beyond question. This is shown by the evidence for both sides and so admitted by the lower court

in its findings. It has also been shown that in some of his work the purpose sought was attained. The only question to be decided is whether or not these activities had been authorized by José L. Pesquera. The plaintiff has in his favor his own testimony, given minutely and in detail, the presumption that he acted on behalf of the defendant, and the services rendered. In order to overcome this evidence the defendant offered his own testimony, in the form of a deposition, and the testimony of Eugenio Toral given before the trial court. This last witness testified that he had engaged Miranda's services exclusively in his own name and that he agreed to pay him his fees and disbursements for court proceedings out of the percentage to which he was entitled of the rent produced by the lots "and besides part of such expenditure he would charge as overhead." So that Toral, exclusively a collecting agent according to the testimony of Pesquera, was so extravagant as to engage the services of an attorney and to pay court fees out of the 10 per cent which, as stated by him, he was paid out of the rent. We can not place any reliance on the witness' statements. The only part of his testimony to be trusted is certainly where he says that the payments were charged up as overhead. According to Pesquera, Eugenio Toral told him that exclusively for his own account and because he was interested in making collections he had engaged Miranda to write a few letters to certain tenants who had defaulted in their payments, for which work Toral would pay Miranda a certain percentage of the sums to be collected as the result of such letters; it being understood, however, that Miranda's activities would never go so far as to file complaints or bring actions of any kind. If Toral reported in this sense to Pesquera there is no doubt that he openly stated a falsehood, because he was apprised of the judicial proceedings brought in the name of Pesquera.

Toral testified that Pesquera was in the United States at the time these complaints were filed and that he learned

of them when he returned. However, he stated on cross-examination that he did not know when the complaints were filed. Toral also asserted that the draft of the contract of lease, of which Miranda gave him a copy, was prepared at his personal request, for his personal use, because he had in mind to lease all the lots from Pesquera and he wanted to make a new contract. If these were the instructions which Miranda received from Toral, it does not so appear from the draft where only José L. Pesquera appears as lessor, without any mention whatever of Eugenio Toral's name, either as lessee or in any other capacity. Toral admitted that he saw the plaintiff several times in Pesquera's office and that Miranda, when failing to find him there, would say to him that he was going to look for him in his home. These visits to Pesquera can not but have some significance. If, as maintained by the defendant, Miranda was without power to represent him, it can not be understood why he often sought him. And if Miranda considered that Toral had power to engage his services on behalf of Pesquera, it is logical to think that on meeting the latter he should talk to him about the work he was performing in his name.

The defendant testified that he remained about a month in the United States and that upon his return he heard for the first time and through one of his tenants of the complaints filed by Miranda, and that upon learning of this, "he took the proper steps to withdraw those judicial proceedings." The time of the return of Pesquera from the United States does not definitely appear from the record. It is a fact, according to his own testimony, that he was absent only during a month. If Pesquera was in the United States at the time the complaints were filed and his absence lasted only one month, then the defendant had been in Puerto Rico for five and a half months during which time the judicial proceedings instituted by Miranda in his name were pending. As we have already stated, the defendant learned of said proceedings upon his return from the United States.

The complaints were filed at the end of January 1929, and those upon which no action had been taken appear as having been withdrawn on August 14, 1929. If the words "upon his return" mean that the defendant immediately after his return learned of Miranda's activities, it is strange that he should have waited five and a half months before ordering the withdrawal of the suits. The very district court, which rendered judgment for the defendant, stated that a motion to dismiss is something very simple and easily written and that "really the defendant should have acted more promptly." The cases were withdrawn on motion of Miranda. If, as stated by the plaintiff, Pesquera was in Puerto Rico at the time the complaints were filed, it is strange that he should not have heard of them from Toral, or from his tenants, or from some other source. And if he was in the United States, it can not be understood why on his return he should be told by Toral that the activities of Miranda were never to go as far as filing complaints or bringing any judicial proceedings. This report, according to the defendant, came precisely from his own manager or agent who engaged the attorney, authorized the complaints, and paid the court fees.

We have carefully examined the evidence introduced and we think that the presumption that the attorney acted in behalf of the party which he claimed to represent has not been overcome. In our judgment, the testimony of Miranda remains unaffected. The testimony of Toral is too weak to destroy it. It is enough to weigh carefully his words in order to conclude that he was not speaking the truth. Nor has the legal presumption in favor of the plaintiff been overcome by the deposition given by the defendant in Washington. That being so, the judgment rendered by the District Court of Bayamón should be reversed and another rendered instead in favor of the plaintiff.

There now remains to be determined the amount of compensation to be paid, taking as a basis the documents

presented and the testimonial evidence introduced. It has been shown that Miranda rendered his services to Pesquera for more than a year. There appear from the record twenty-six letters demanding payment, addressed to the several tenants of Pesquera's lots.

There also appears a draft of a contract of lease regarding the building lots, prepared by the plaintiff. Seven complaints were filed in the municipal court, of which four were withdrawn, and two judgments were rendered. The sums claimed in the seven complaints were respectively as follows: $54, $55.40, $37.25, $30, $53, and $116.25. The plaintiff also testified that he had personally tried to collect the rentals due.

We are of the opinion that the plaintiff is entitled to the sum of $300 as compensation, with costs but excluding attorney's fees.